T.C. Memo. 1996-563

UNITED STATES TAX COURT

SUMMIT SHEET METAL CO., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20131-93.             Filed December 30, 1996.

<u>Elliott H. Kajan</u> and <u>Steven R. Mather</u>, for petitioner.

<u>Lisa W. Kuo</u> and <u>T. Elizabeth Stetson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal income tax of $307,671 for 1987.

Petitioner is an S corporation.  An S corporation is liable for tax on net recognized built-in gain if that gain exceeds 50 percent of its taxable income for the year in issue.  Sec.

1374(a).[1]  Respondent determined that petitioner is liable for
tax under section 1374(a).

Petitioner realized capital gains of $929,915 in the year in
issue.  That amount is $12,762 more than 50 percent of the amount
of petitioner's revised taxable income for the year in issue.
Petitioner seeks to increase its taxable income so that its
capital gains are less than 50 percent of its taxable income.
Thus, petitioner has adopted positions which, if successful,
would increase its taxable income.  Petitioner contends (1) that
it paid unreasonable compensation to its officers during the year
at issue, and (2) that it improperly deducted bonuses it paid to
its officers in the year at issue (when petitioner declared the
bonuses) instead of the following year (when petitioner paid the
bonuses).

We must decide the following issues:

1.    Whether reasonable compensation for petitioner's
officers for the year in issue is $618,295 as respondent contends
and as petitioner reported on its return, $421,938 as petitioner
contends, or some other amount.  We hold that $618,295 is
reasonable.

2.    Whether, as respondent contends, petitioner must have
respondent's consent to delay deductions for bonuses from the

---

[1]Section references are to the Internal Revenue Code in
effect for the year in issue.  Rule references are to the Tax
Court Rules of Practice and Procedure.

year petitioner declared the bonuses to the following year when the bonuses were paid because it is a change in accounting method under section 446(e). We hold that it must.

3. Whether petitioner's net recognized built-in gain was more than 50 percent of its taxable income in the year in issue. We hold that it was.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioner

Petitioner is a California corporation which was incorporated on August 30, 1960. Its principal place of business was in Orange County, California, when it filed the petition in this case.

Petitioner manufactured and installed flashing, vents, pipes, and light-gauge sheet metal for housing projects in southern California. Ninety percent of petitioner's business was sheet metal installation, and 10 percent was sheet metal fabrication. There were 8 to 10 other companies in Orange County also doing that work. Petitioner served a large part of southern California, including the counties of San Diego, Orange, Los Angeles, and Riverside.

Petitioner's fiscal years ended on June 30 in 1964, 1966 to 1975, 1977, 1978, 1980 to 1982, 1984, and 1985. In 1986, petitioner changed the end of its fiscal year from June 30 to

September 30.  Petitioner's fiscal year ended on September 30 in 1986 and 1987.  In 1987, petitioner changed its fiscal year to end on December 31.

Petitioner had an initial capital investment of $65,579 in 1960 and had total assets of $4,183,222 on September 30, 1987. Petitioner made a profit every year from 1960 to the year in issue.  Petitioner had more jobs under contract in the year in issue than in previous years.  The number of petitioner's employees increased greatly from 1984 to 1990.

Petitioner's financial situation in fiscal years 1986 and 1987 was as follows:

|  | FY 1986 | FY 1987 |
|---|---|---|
| Total sales | $6,666,643 | $8,621,838 |
| Gross profit | 2,746,670 | 3,560,057 |
| Ordinary income before taxes | 803,997 | 893,236 |
| Beginning total assets | 3,407,735 | 3,761,574 |
| Ending total assets | 3,761,574 | 4,183,222 |
| Beginning total equity | 1,822,375 | 2,020,646 |
| Ending total equity | 2,020,646 | 3,391,012 |
| Beginning total capital stock and paid-in stock or surplus less paid treasury stock | 50,446 | 50,446 |
| Ending total capital stock and paid-in stock or surplus less cost of treasury stock | 50,446 | 50,446 |
| Beginning accumulated adjustments account | 636,158 | 824,587 |
| Ending accumulated adjustments account | 824,587 | 2,190,307 |
| Beginning retained earnings | 1,135,771 | 1,135,771 |
| Ending retained earnings | 1,135,771 | 1,135,591 |

Petitioner's success in the year in issue resulted in part from an increase in housing construction in southern California.

Petitioner has used the accrual method of accounting since 1964. Petitioner paid administrative salaries of $192,079 and cost of labor of $2,901,375 during the year in issue.

B.   Petitioner's Shareholders and Officers

1.   Milton J. Chasin

Milton J. Chasin has a bachelor of science degree in accounting. He was licensed as a public accountant in 1948 or 1949. He was employed as an auditor with the California State Board of Equalization in the late 1940's.

Chasin cofounded petitioner in 1960 with Morley Weis (not otherwise described in the record) and Donald Hanson. Gale Searing became a one-third shareholder of petitioner in 1964 after Weis died. Chasin was responsible for the administration of petitioner. He established and was responsible for petitioner's books and records. He kept accurate records for petitioner from 1960 through the year in issue. He negotiated loans and bought material and equipment for petitioner. He negotiated a line of credit for petitioner with Metropolitan Bank in the year in issue. Chasin always had an assistant to help him with the administrative duties.

Chasin worked about 35 hours per week and took about 5 weeks of vacation in the year in issue.

2. Donald Hanson

Hanson graduated from high school. He has no professional licenses. He has owned one-third of petitioner since 1960. He was petitioner's president in the year in issue.

Hanson was more directly involved with petitioner's operations in petitioner's early years than he was during the year in issue. His duties in the early years included fabricating in the shop, installing, and bidding.

During the year in issue, Hanson was responsible for estimating jobs, running the production shop, overseeing union contracts, and supervising petitioner's union employees. His primary duty was to get jobs for petitioner. He was the person primarily responsible for doing this. He reviewed the contracts in which petitioner agreed to provide materials and perform services. Petitioner's shop foreman and two estimators reported to him. Petitioner had no union problems during the year in issue.

Hanson worked for petitioner about 8 hours per day, 50 weeks per year during the year in issue. He also worked for Summit Supply Co., which was owned by Chasin, Hanson, and Searing. He took 4 to 5 weeks of vacation each year.

3. <u>Gale Searing</u>

Searing did not have a high school education. He was a sheet metal apprentice for 3½ years in the early 1950's, after which he received a journeyman's card. He did not have a professional license. He was petitioner's field superintendent during the year in issue.

In the year in issue, Searing was responsible for petitioner's metal work installation. He supervised installers' supervisors and coordinated installation of petitioner's product. He was responsible for petitioner's laborers.

Searing, Chasin, and Hanson knew each other's duties but did not know how to perform them. Searing worked 8 hours per day, 50 weeks per year for petitioner and took about 10 days of vacation during the year in issue. He also worked for North County Builders and Summit Supply Co. Searing received cash distributions, but not wages, from Summit Supply Co.

4. <u>Petitioner's Board of Directors and Officers</u>

Chasin, Hanson, and Searing were the only members of petitioner's board of directors from 1964 to the year in issue. They have each owned one-third of petitioner's stock since 1964. During the year in issue, Hanson was president, Chasin was vice president and chief financial officer, and Searing was secretary. Chasin, Hanson, and Searing consulted with each other before

making important decisions for petitioner.  Chasin, Hanson, and Searing never had a written employment contract with petitioner. During the year in issue, petitioner paid salaries of $108,575 to Chasin, $131,360 to Hanson, and $131,360 to Searing.  Petitioner had a retirement plan for its nonunion employees including Chasin, Hanson, and Searing.  Petitioner contributed $30,000 to its retirement plan in the year in issue for each of its three shareholders.

Each of the three shareholders had authority to sign petitioner's checks during the year in issue without having them cosigned by another shareholder.  Chasin, Hanson, and Searing reported their income and expenses on a calendar year basis and used the cash method of accounting.

Petitioner had a $50,000 group term life insurance policy for each shareholder.

5.   Summit Supply Co. and North County Builders

Chasin, Hanson, and Searing were equal partners of Summit Supply Co., a California general partnership, in 1986 and 1987. Summit Supply Co. bought, developed, and sold real estate. Summit Supply Co. did not pay Chasin, Hanson, or Searing for their services to Summit Supply Co., which consisted of helping to buy, develop, and sell real estate.  Chasin, Hanson, and

Searing each received equal amounts of the net profits from Summit Supply Co.

Chasin, Hanson, and Searing owned North County Builders with Sherman and Harris (neither of whom is otherwise described in the record). North County Builders was developing an apartment house project in the year in issue.

C. Bonuses Paid to Chasin, Hanson, and Searing

1. Petitioner's Bonus Payment Procedures

Petitioner authorized bonuses each year for its officers for their services. Petitioner's board of directors (Chasin, Hanson and Searing) authorized the bonuses to be paid when petitioner's cash position reasonably permitted, but not later than September 15 of each taxable year from 1966 to 1986 except 1971 and 1972. In taxable years 1971 and 1972, petitioner's board of directors authorized an approximate amount for a combined salary and bonus for each officer.

Chasin, Hanson, and Searing met each year to consider factors such as petitioner's success, development, profits, needs, and tax considerations and their own tax considerations in deciding the amount of the bonuses. Chasin, Hanson, and Searing agreed unanimously on the amounts of their bonuses each year, including the year in issue. Each year, Chasin, Hanson, and

Searing signed a corporate resolution stating what they decided about their bonuses.

2.    Timing of Petitioner's Bonus Payments

Petitioner paid the bonuses after the end of each of its fiscal years before the year in issue, but not later than September 15 of each year, except the year in issue.  For those years, the resolution authorizing the bonuses said:

> NOW, THEREFORE, BE IT RESOLVED, that a bonus of [amount for each year for each officer] * * * to each of the * * * [officers] be and the same hereby is granted and awarded, the same to be paid to said persons as soon hereafter as the cash position of the corporation reasonably permits, but in any event on or before September 15, * * * [year bonuses are authorized].

Petitioner paid the bonuses after the end of its fiscal years ending on September 30 in 1986 and 1987 and before December 15 of those years.

Chasin, Hanson and Searing unanimously approved the following resolution on September 16, 1987:

> WHEREAS, the success and development of the business of this corporation during the fiscal year to end September 30, 1987 is largely the result of the efforts of certain of the key personnel of this corporation; and
>
> WHEREAS, it is deemed to be to the best interests of this corporation to provide for a special reward for the efforts of said key personnel in order that said key personnel be furnished with a continuing incentive; and

WHEREAS, DONALD HANSON, President of this corporation, MILTON J. CHASIN, Vice President of this corporation, GALE SEARING, Secretary of this corporation, have each contributed in a special degree to the success of this corporation; and

WHEREAS, PAUL HARDIE, Estimator, HERMAN AUSLANDER, Field Superintendent, TOM KRAEMER, Assistant Field Superintendent, GEORGE KARSTEN, Shop Superintendent, BILL BUSHEY, Estimator, and LINDA SANDS, Bookkeeper, are also worthy of special recognition;

NOW, THEREFORE, BE IT RESOLVED, that the following bonuses be paid by the corporation on or before December 15, 1987:

| Employee | Amount of Bonus |
|----------|-----------------|
| Herman Auslander | $46,000 |
| Bill Bushey | $ 7,200 |
| Paul Hardie | $47,000 |
| George Karsten | $46,000 |
| Tom Kraemer | $25,000 |
| Linda Sands | $ 6,000 |

| Officer | Amount of Bonus |
|---------|-----------------|
| Milton J. Chasin | $75,000 |
| Donald Hanson | $75,000 |
| Gale Searing | $97,000 |

The resolution for the year in issue required petitioner to pay the bonuses by December 15, 1987. Chasin, Hanson, and Searing could not have been paid the bonuses in the year in issue without the consent of all of them.

3. Payment of the Bonuses in 1987

On September 30, 1987, pursuant to the board's resolution, petitioner debited its payroll expense--officers account by $247,000 for bonuses it declared that year. Chasin recorded

petitioner's accrued liability for wages in a document entitled, "Summit Sheet Metal Company, Inc. Accrued Wages". Chasin entered each officer's bonus on that document on September 30, 1987.

Petitioner paid the bonuses on December 15, 1987, by paying Federal and State payroll taxes for its officers in the following amounts: $75,000 for Chasin, $75,000 for Hanson, and $97,000 for Searing.

4. Summary of Petitioner's Practices Relating to Bonuses It Paid to Its Officers

Petitioner declared bonuses for its three officers near the end of each of its fiscal years from 1966 to the year in issue and paid the bonuses in the first 75 days following the end of the fiscal year in which they were declared. Petitioner accrued the deduction for the bonuses in the year the bonuses were declared in its fiscal years from 1966 through 1987.[2]

D. Building Sale

Petitioner sold a building on May 1, 1985, and realized a net capital gain of $1,160,069. Petitioner reported the gain under the installment method. Petitioner received the final

---

[2]This fact is established for 1984 to 1987 by petitioner's tax returns; for 1966 to 1983 we infer that petitioner's practice was the same because petitioner's practice of declaring and paying bonuses was consistent from 1966 to 1987, and because neither party contends otherwise.

payment of $1.2 million in the year in issue.  Of that amount, $929,915 was taxable.

E.    Petitioner's S Corporation Election and Income Tax Returns

Petitioner was a subchapter C corporation from August 30, 1960, to June 30, 1985.  On July 1, 1985, petitioner elected to be taxed under subchapter S.

Petitioner deducted $247,000 for bonuses it paid to its officers as part of the compensation of $618,295 it paid to the officers (not counting fringe benefits) for the year in issue.

Petitioner reported the following on a Schedule K attached to its S corporation return for the year in issue:

| | |
|---|---|
| Ordinary income | $893,236 |
| Income from rental real estate activity | 38,033 |
| Long term capital gain | 929,915 |
| Charitable contributions | (2,845) |
| Total | $1,858,339 |

Petitioner did not include the $929,915 gain on its tax return for 1987.  However, petitioner reported each officer's share on his respective Schedule K-1.  Petitioner allocated the gain to Chasin, Hanson, and Searing, each of whom reported one-third of the gain on his individual income tax return for 1987.

Petitioner seeks to delay the year of its deduction of bonuses for its officers from the year in issue to the following

year.  Petitioner did not ask respondent for permission to change its method of accounting for the year in issue.

Petitioner overstated its ending inventory on its return for 1987 by $24,033.

OPINION

A.  Background

Petitioner realized a $1,160,069 net capital gain from the sale of a building in May 1985.  At that time, petitioner was a C corporation.  Petitioner reported the gain on the installment method, thereby postponing recognition of $929,915 of the gain until 1987 when it was to receive the last installment.  Sec. 453(c).

On July 1, 1985, petitioner elected to be taxed as an S corporation.  At that time, petitioner had a realized but unrecognized capital gain of $929,915 from the sale.  That amount is $12,762 more than 50 percent of the amount of petitioner's revised taxable income for the year in issue (before deciding the issues in dispute here).[3]  An S corporation must pay tax if its net recognized built-in gain is more than 50 percent of its taxable income.  Sec. 1374(a).

---

[3]This takes into account petitioner's inadvertent $24,033 understatement of its ending inventory.

Respondent determined a deficiency in petitioner's income tax of $307,671 for 1987. Respondent's determination is presumed to be correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

B.  Whether Petitioner Paid Unreasonable Compensation to its Officers in the Year in Issue

Petitioner contends that it deducted an unreasonable amount for officers' compensation for the year in issue. Petitioner contends that a total of no more than $421,938 is reasonable compensation for its three officers. Respondent contends that the compensation petitioner paid and deducted ($618,295) was reasonable.

1.  Whether All of the Compensation Was Paid for Services Provided to Petitioner

A corporation may deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered". Sec. 162(a)(1). Reasonable compensation must be purely for services provided to the company which provides the compensation. Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983), revg. and remanding T.C. Memo. 1980-282; sec. 1.162-7(a), Income Tax Regs.

Petitioner contends that Searing and Hanson spent a substantial amount of time in the years in issue working for

North County Builders, which were businesses other than petitioner. Hanson testified that he worked about 25 hours a week for petitioner. Searing testified that he worked for petitioner from 2 to 10 hours a week. Respondent contends that petitioner paid its officers exclusively for services performed for petitioner.

We agree with respondent. Petitioner's interrogatory answers conflict with Hanson's and Searing's testimony. In supplemental interrogatory response for petitioner, Chasin stated that Searing and Hanson "rendered services for petitioner based upon an 8-hour day for 50 weeks per year." The supplemental response suggests that the officers provided substantial services for petitioner. Chasin testified that the supplemental response included services for business ventures other than petitioner. Chasin's explanation is contrary to the language in the supplemental response, which states that the services were for petitioner.

North County Builders had five owners, including petitioner's three officers. It is implausible that petitioner would pay salaries that North County Builders owed.

Petitioner's board of directors adopted written resolutions which stated that petitioner declared the bonuses because its officers contributed substantial services to petitioner.

Petitioner contends that this language from its resolutions means nothing because it used the identical language for many years as boilerplate. We do not believe that the board of directors took the decisions to pay the bonuses and the resolutions approving them as lightly as petitioner suggests.

We conclude that petitioner paid the compensation at issue for services performed by its officers for petitioner.

2. <u>Whether the Compensation Was Reasonable in Amount</u>

Whether the amount of compensation is reasonable is a question of fact. <u>Botany Worsted Mills v. United States</u>, 278 U.S. 282, 289-290 (1929); <u>Estate of Wallace v. Commissioner</u>, 95 T.C. 525, 553 (1990), affd. 965 F.2d 1038 (11th Cir. 1992). Factors to consider in deciding whether compensation is reasonable include (a) the employee's qualifications; (b) the nature, extent, and scope of the employee's work; (c) the size and complexity of the business; (d) a comparison of salaries paid with sales, net income, gross income, and capital value; (e) general economic conditions; (f) the taxpayer's salary policy to all employees; (g) the taxpayer's financial condition; (h) prevailing rates of compensation for comparable positions in comparable companies; (i) compensation paid in prior years; and (j) whether the employee and the taxpayer dealt at arm's length. <u>Elliotts, Inc. v. Commissioner</u>, <u>supra</u> at 1245-1248; <u>Kennedy v.</u>

Commissioner, 671 F.2d 167, 173-174 (6th Cir. 1982), revg. and remanding 72 T.C. 793 (1979); Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949); R.J. Nicoll Co. v. Commissioner, 59 T.C. 37, 48 (1972).  No single factor controls.  Mayson Manufacturing Co. v. Commissioner, supra.

Petitioner called an expert, Edwin A. Scott, Jr. (Scott), to testify about the reasonable compensation issue.  Respondent did not call an expert to testify.  Expert witnesses' opinions may help the Court understand an area requiring specialized training, knowledge, or judgment.  Snyder v. Commissioner, 93 T.C. 529, 534 (1989).  We may be selective in deciding what part of an expert's opinion we will accept.  Helvering v. National Grocery Co., 304 U.S. 282, 295 (1938); Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), affg. T.C. Memo. 1974-285; Parker v. Commissioner, 86 T.C. 547, 561-562 (1986).

a.    Employees' Qualifications

An employee's superior qualifications for a position may justify high compensation.  See, e.g., Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1158 (1980); Dave Fischbein Manufacturing Co. v. Commissioner, 59 T.C. 338, 352-353 (1972).

Each of petitioner's officers was well qualified for his position.  All three officers performed successfully for petitioner.

Petitioner contends that a suitable replacement could perform the job of each officer. Petitioner's point does not establish much because it does not address how difficult it would be or what amount of pay would have been required to find someone suitable.

This factor tends to show that the compensation at issue was reasonable.

### b. Nature, Extent, and Scope of Duties

The position held by the employee, hours worked, and duties performed may justify high compensation. Mayson Manufacturing Co. v. Commissioner, supra; see, e.g., Elliotts, Inc. v. Commissioner, supra at 1245-1246; American Foundry v. Commissioner, 536 F.2d 289, 291-292 (9th Cir. 1976), affg. in part and revg. in part 59 T.C. 231 (1972); Home Interiors & Gifts, Inc. v. Commissioner, supra at 1158.

Petitioner contends that its officers had minimal responsibilities. We disagree. Each officer was responsible for an important part of petitioner's operations. Petitioner's officers did not know how to perform each other's jobs. This made each of them less valuable to petitioner. By the year in issue, petitioner was a well-established and stable business. Petitioner's officers were no doubt required to work less than if petitioner had been a new business.

On balance, this factor tends slightly to show that the compensation at issue was reasonable.

c.    Size and Complexity of Taxpayer

The size and complexity of a taxpayer's business can indicate whether compensation is reasonable.  Elliotts, Inc. v. Commissioner, 716 F.2d at 1246; Pepsi-Cola Bottling Co. v. Commissioner, 528 F.2d 176, 179 (10th Cir. 1975), affg. 61 T.C. 564 (1974); Mayson Manufacturing Co. v. Commissioner, supra. Petitioner's witnesses testified that petitioner's business was straightforward and routine.  However, petitioner had sales in the year in issue of more than $8.6 million.  It had assets of $3.8 million at the start of the year in issue and $4.2 million at the end.  Petitioner served a large part of Southern California, including the counties of San Diego, Orange, Los Angeles, and Riverside.

Considering both the testimony and the other evidence of petitioner's business, we conclude that this factor tends to show that the compensation at issue was reasonable.

d.    Comparison of Salaries Paid With Sales, Net Income, Gross Income, and Capital Value

Courts have compared compensation to sales and gross and net income in deciding whether compensation is reasonable.  Elliotts, Inc. v. Commissioner, supra at 1246; Mayson Manufacturing Co. v. Commissioner, supra.

Petitioner's compensation of officers was 7.2 percent of sales. In Mayson Manufacturing Co., the Court found compensation that was more than 25 percent of sales to be reasonable. Mayson Manufacturing Co. v. Commissioner, supra at 120. Petitioner's officers' compensation was 41 percent of petitioner's ordinary income before taxes and deduction of officers' compensation. We have found that compensation equal to 43 percent of gross profit is reasonable for a company comparable in size to petitioner. L & B Pipe & Supply Co. v. Commissioner, T.C. Memo. 1994-187.

This factor tends to show that the compensation at issue was reasonable.

### e. General Economic Conditions

General economic conditions may affect a company's performance and, thus, show the extent, if any, of an employee's effect on the company. Elliotts, Inc. v. Commissioner, supra; Mayson Manufacturing Co. v. Commissioner, supra.

Petitioner's sales increased more than 70 percent in the 2 years before the year in issue. Petitioner's officers testified that petitioner succeeded because there was an economic boom in Southern California before and during the year in issue. Respondent did not effectively challenge their testimony on this point. This factor tends to show that the compensation at issue was unreasonable.

f.    Taxpayer's Salary Policy to All Employees

Courts have considered the taxpayer's salary policy for its other employees in deciding whether compensation is reasonable. Home Interiors & Gifts, Inc. v. Commissioner, supra at 1159. There is no evidence that petitioner has a formal policy for setting salaries for its officers or other employees. Because the record is not clear on this point, we do not apply this factor.

g.    Taxpayer's Financial Condition

The past and present financial condition of the company is relevant to deciding whether compensation is reasonable. Id. at 1157-1158.

Petitioner grew from total equity (capital stock and paid-in surplus) of $65,579 to $2,020,646 for the year in issue. Petitioner always made a profit. For the year in issue, petitioner's gross profit was 41 percent of gross income, return on sales was 10.3 percent, return on assets was 22.5 percent, and return on equity was 33 percent. Petitioner's officers' compensation decreased 16.3 percent as a percentage of net sales from the year before the year in issue to the year in issue while its sales and gross profit increased nearly 30 percent.

Petitioner points out that a survey by the Sheet Metal and Air-Conditioning Contractors' National Association (SMACNA) dated

October 26, 1988, shows that petitioner's compensation of its officers exceeds the average amount paid by similar firms. However, this does not establish that the compensation of petitioner's officers was unreasonable because the SMACNA survey also shows petitioner performed considerably better financially than the SMACNA survey respondents.

SMACNA sent each member a questionnaire asking for financial information, such as gross profit, gross sales, and executive compensation.  Forty-one SMACNA survey respondents had sales of more than $8.2 million.  The following chart compares the SMACNA survey results for these respondents with data for petitioner for the year in issue.

### SMACNA survey respondents with sales over $8.2 Million

| Net income before tax as a -- | SMACNA average | Petitioner |
|---|---|---|
| Percent of sales | 3.5 | 10.3 |
| Percent of assets | 9.3 | 22.5 |
| Percent of net worth | 25.0 | 33.0 |

The 41 respondents had an average gross profit margin of 18.8 percent of sales; petitioner had 41 percent in the year in issue.  Petitioner's financial performance was superior to that of SMACNA survey respondents which had sales exceeding $8.2 million.

This factor tends to show that the compensation at issue was reasonable.

>    h.    Prevailing Rates of Compensation for Comparable Positions in Comparable Companies

In deciding whether compensation is reasonable, we compare it to compensation paid for comparable positions in comparable companies. Elliotts, Inc. v. Commissioner, 716 F.2d 1241 (9th Cir. 1983); Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115 (6th Cir. 1949). Scott points out that petitioner's officers were paid more than the average paid to officers of companies that responded to the SMACNA and Contractor magazine surveys. While both surveys have flaws for our purposes, respondent offered no evidence on salary comparability. We conclude that this factor tends to show that the compensation was unreasonable.

>    i.    Compensation Paid in Prior Years

An employer may deduct compensation paid in a year even though the employee performed the services in a prior year. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 119 (1930); R.J. Nicoll Co. v. Commissioner, 59 T.C. at 50-51.

Petitioner's officers testified that petitioner may have underpaid them in the early years, but that petitioner caught up at least 10 years before the years in issue. Respondent points out that petitioner offered no documentary evidence on this factor; however, respondent offered no evidence that contradicts

the testimony of petitioner's officers.  Their testimony was credible on this point.  We conclude that none of the compensation in the year at issue was paid for services performed in prior years.  This factor tends to show that the compensation was unreasonable.

> j.    Whether the Employee and Employer Dealt at Arm's Length

We closely scrutinize compensation if the employee controls the employer to see whether it is unreasonable in amount or payment for something other than the employee's services. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1322-1324 (5th Cir. 1987), affg. T.C. Memo. 1985-267; Elliotts, Inc. v. Commissioner, supra at 1246; Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 152-154 (8th Cir. 1974), affg. T.C. Memo. 1973-130.

Chasin, Hanson, and Searing owned 100 percent of petitioner's stock.  That leads us to consider whether an independent investor would have approved the compensation in view of the nature and quality of the services performed and the effect of those services on the investor's return on his or her investment.  Owensby & Kritikos, Inc. v. Commissioner, supra at 1326-1327; Elliotts, Inc. v. Commissioner, supra at 1246-1247. An independent investor would have received a 33-percent return on equity.  We believe that an independent investor would approve

petitioner's officers' compensation because of the officers' successful leadership of petitioner.

This factor tends to show that the compensation at issue for services to petitioner was reasonable.

### 3. Conclusion

We conclude that the compensation of petitioner's officers in the year in issue was reasonable because of their qualifications and the scope of their duties, petitioner's size, growth, and financial success, the officers' compensation in relation to petitioner's sales, and the fact that, according to the SMACNA survey, the taxpayer performed well compared to other reasonably comparable firms.

### C. Whether Petitioner May Change the Year It Deducts Bonuses Without Respondent's Consent

#### 1. Contentions of the Parties

Petitioner seeks to change the year it deducts its officers' bonuses from the year it authorized them, as petitioner reported on its return, to the following taxable year, in which the officers received and reported the bonuses.

Respondent contends that petitioner needed but did not have respondent's permission to change the year it deducted its officers' bonuses.[4]  Sec. 446(e).

---

[4]Petitioner contends that respondent's contention that
(continued...)

Petitioner contends that changing the year it deducts its officers' bonuses is not a change of accounting method, and that it is a correction required to comply with section 267(a). Section 267(a)(2), which was enacted in 1984, bars a taxpayer from deducting a payment to a related taxpayer before the related taxpayer includes the payment in income. Petitioner contends that its accrual of a deduction for the bonuses in the year they are awarded (before they are paid) violates section 267(a)(2) because petitioner's officers included the bonuses in income in a later year. Petitioner contends that it does not need respondent's consent to change to comply with section 267(a)(2).

---

[4](...continued)
petitioner must have consent under sec. 446(e) is new matter on which respondent bears the burden of proof. We agree. Respondent first raised this issue in the amended answer. A new theory that is presented to sustain a deficiency is treated as a new matter when it either increases the original deficiency or requires the taxpayer to present different evidence. Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989); Achiro v. Commissioner, 77 T.C. 881, 890-891 (1981). This issue is a new matter because the evidence relevant to it differs from that relevant to the original determination. Respondent bears the burden of proof for any new matter. Rule 142(a).

Petitioner contends that respondent failed to carry the burden of proof. We disagree. The parties do not dispute that petitioner had a longstanding practice of deducting the bonuses in the year it authorized them and paying them in the following year, that petitioner seeks to change the year it deducts the bonuses for its officers from the year in issue to the next taxable year to comply with sec. 267(a) several years after the law changed, and that petitioner does not have respondent's consent to do so. We decide this issue based on those facts. Thus, the burden of proof does not affect our decision on this issue.

Similarly, petitioner contends that it does not need respondent's consent to change from treating the bonuses incorrectly to treating them correctly.[5]

Respondent does not dispute that Chasin, Hanson, and Searing are related for purposes of section 267(a). However, even if section 267(a) applies, we conclude for reasons discussed next that petitioner would need respondent's consent to change the year it deducts the officers' bonuses.

2.  Whether Changing the Year Petitioner Deducts Bonuses Is a Change of a Material Item for Purposes of Section 446(e)

We first decide whether changing the year petitioner deducts its officers' bonuses is a change in the treatment of a material item for purposes of section 446(e).

A taxpayer generally must have the consent of the Secretary to change the method of accounting it uses for material items. Sec. 446(e); Pacific Enters. & Subs. v. Commissioner, 101 T.C. 1, 18 (1993); Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 509 (1989); Standard Oil Co. v. Commissioner, 77 T.C. 349, 380 (1981); secs. 1.446-1(e)(2)(ii)(a), 1.481-1(a)(1), Income Tax

---

[5]Respondent alternatively contends that petitioner complied with sec. 267(a)(2) because petitioner's officers constructively received their bonuses in the year in issue. We need not decide this issue because we conclude that sec. 267(a) does not apply, and if it did, petitioner requires respondent's consent to change the year it deducts its officers' bonuses.

Regs.  An item is material for purposes of section 446(e) if the time for including it in income or deducting it is at issue. Knight-Ridder Newspapers v. United States, 743 F.2d 781, 798 (11th Cir. 1984); Wayne Bolt & Nut Co. v. Commissioner, supra at 510; sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.

Petitioner's officers' bonuses are material items for purposes of section 446(e) because petitioner seeks to change the year it deducts the bonuses from the year it declared them to the following year.  Wayne Bolt & Nut Co. v. Commissioner, supra at 509-510; H.F. Campbell Co. v. Commissioner, 53 T.C. 439, 447 (1969), affd. 443 F.2d 965 (6th Cir. 1971); Fruehauf Trailer Co. v. Commissioner, 42 T.C. 83, 103 (1964), affd. 356 F.2d 975 (6th Cir. 1966); sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.

3.    Whether Petitioner May Change Its Accounting Method Without Respondent's Consent Based on a Change in Law

Before raising the section 267(a)(2) issue here, petitioner had consistently deducted its officers' bonuses in the year it authorized them.  A change in the consistent treatment of a material item generally requires the Commissioner's consent under section 446(e).  Witte v. Commissioner, 513 F.2d 391, 393-394 (D.C. Cir. 1975), revg. T.C. Memo. 1972-232; H.F. Campbell Co. v. Commissioner, supra; Fruehauf Trailer Co. v. Commissioner, supra.

Petitioner contends that an accounting change made to comply with section 267(a)(2) does not require respondent's consent.

Petitioner relies on <u>Douthit v. United States</u>, 299 F. Supp. 397 (W.D. Tenn. 1969), revd. on other grounds 432 F.2d 83 (6th Cir. 1970). On May 13, 1960, Congress enacted the Dealer Reserve Adjustment Act of 1960, Pub. L. 86-459, 74 Stat. 124. That act required the taxpayers in <u>Douthit</u> to change their method of accounting. The taxpayers in <u>Douthit</u> sought to comply with the new law on their tax return for 1961.

The court in <u>Douthit</u> said: "Section 446(e) requiring consent of the Commissioner is not applicable to a change in accounting required by law." <u>Douthit v. United States</u>, <u>supra</u> at 403. In <u>Douthit</u>, the taxpayers changed their treatment of an item in the tax return they filed for the first year in which the law was effective. <u>Id.</u> at 400. In the instant case, the change in law on which petitioner relies occurred in 1984 and was effective for taxable years beginning after December 31, 1983. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 174(a)(1) and (b)(2)(A), 98 Stat. 494, 704, 708. Petitioner first cited section 267(a) in this case in 1994 after the audit of its 1987 return and while this case was pending. Petitioner does not contend that it raised this issue with respondent before that time. The rationale for allowing a taxpayer to change an accounting method immediately after the law is changed, e.g., to simplify prompt compliance by a large number of taxpayers, is

missing when a taxpayer does not act for several years, and acts only after being audited and commencing a Tax court case for the year at issue.  Douthit is not controlling authority for petitioner.

In United States v. Kleifgen, 557 F.2d 1293, 1297 n.9 (9th Cir. 1977), a case decided by the U.S. Court of Appeals for the Ninth Circuit, the court to which this case is appealable, the court said:

> The Commissioner's consent to a change in accounting methods is required regardless of whether the change is from one proper method to another proper method or from an improper method to a proper one. Witte v. Commissioner, * * * 513 F.2d 391 (1975).  See Treas Reg. §1.446-1(e)(2).

In  Southern Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 682 (1980), supplemented by 82 T.C. 122 (1984), we said:

> In addition, consent is required when a taxpayer, in a court proceeding, retroactively attempts to alter the manner in which he accounted for an item on his tax return.  If the alteration constitutes a change in the taxpayer's method of accounting, the taxpayer cannot prevail if consent for the change has not been secured. [Citations omitted.[6]]

---

[6]In dicta, the Court in Southern Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 685 (1980), said that it was not a case in which the taxpayer was changing from an incorrect to a correct method, but that if it were, it might be inclined, under some decisions of this Court, to not require the Commissioner's consent.  We need not consider those dicta further in light of the position of the U.S. Court of Appeals for the Ninth Circuit in United States v. Kleifgen, 557 F.2d 1293, 1297 n.9 (9th Cir. 1977).

Petitioner points out that a taxpayer may recharacterize interest or salary as dividends without being considered to have changed its method of accounting. Section 1.446-1(e)(2)(ii)(b), Income Tax Regs., does not apply here because the issue here is the timing, not the character, of the deduction.

Petitioner relies on Evans v. Commissioner, T.C. Memo. 1988-228, and Gimbel Bros., Inc. v. United States, 210 Ct. Cl. 17, 535 F.2d 14, 23 (1976). Both cases held that the taxpayer may correct the treatment of an item without the Commissioner's consent. Unlike those in the instant case, the taxpayers and the corporation in Evans made the correction on their returns for the year in issue.

In Gimbel Bros., Inc. v. United States, supra, the taxpayer elected to use the installment method of accounting to report income from installment sales but applied it erroneously. Id. at 15. The taxpayer filed amended returns to correct the error apparently before the Commissioner audited the year in issue. Unlike the taxpayers in Evans and Gimbel Bros., petitioner did not seek to change how it treats the bonuses on a tax return or an amended return. Rather, petitioner did so as part of this case after respondent's audit.

Petitioner has cited other cases relating to a taxpayer's change in accounting methods. We have considered all of those

cases; the cases discussed above are those that most closely resemble the instant case.

D.   Conclusion

We hold that petitioner must have respondent's consent under section 446(e) to change the year it reports payment of the bonuses.  Petitioner does not have respondent's consent.  Thus, petitioner may deduct its officers' bonuses only in the year in issue as it reported on its return.

For the foregoing reasons, we conclude that petitioner is liable for the tax under section 1374(a) on the $929,915 net capital gain because the net capital gain is more than 50 percent of petitioner's taxable income.

To reflect the foregoing and concessions,

Decision will be

entered under Rule 155.