# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 24, 2011

No. 10-60921

Lyle W. Cayce
Clerk

RAMESH J. BOSAMIA; PRAGATI BOSAMIA

Petitioners-Appellants

v.

COMMISSIONER OF INTERNAL REVENUE

Respondent-Appellee

Appeal from the Decision
of the United States Tax Court

Before REAVLEY, GARZA, and GRAVES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This case presents a question of first impression under the Internal Revenue Code, 26 U.S.C. § 1 *et seq.* ("the Code"):[1] whether the Commissioner of Internal Revenue effects a change in a taxpayer's method of accounting for the purposes of § 481 when he requires that taxpayer to postpone a deduction from gross income pursuant to § 267(a)(2). Because we conclude that a § 267(a)(2) disallowance constitutes a change in a taxpayer's method of accounting under § 481, we AFFIRM the judgment of the Tax Court.

---

[1] All statutory references herein are to the Code unless otherwise indicated.

No. 10-60921

I

Petitioners-Appellants, Ramesh and Pragati Bosamia, are the sole shareholders of two Subchapter S corporations, India Music and HRI, engaged in the business of importing and selling music, making those entities related parties under § 267.  Because the two entities are related parties under the Code, subsection 267(a)(2) bars the entities from deducting payments owed to the other party from income until the related party includes the payments in its income.  *Summit Sheet Metal Co. v. Comm'r*, T.C. Memo 1996-563, 72 T.C.M. (CCH) 1606, 1996 WL 740748, at \*11 (1996).  Nonetheless, from 1998 to 2004, India Music purchased most of its inventory from HRI on account, yet India Music and HRI accounted for those payments using different methods of accounting.  India Music was an accrual-basis taxpayer, deducting the yearly increase in the accounts payable from its gross income as costs of goods sold when its liability became fixed.  *Burks v. United States*, 633 F.3d 347, 358 (5th Cir. 2011) ("Under the Code, gross income of a trade or business is usually calculated by subtracting the cost of goods sold from the gross receipts of the sale.") (citing 26 U.S.C. § 61(a)).  Meanwhile, HRI was a cash-based taxpayer, opting not to include the payments owed to it by India Music in income until it actually received those payments.

From 1998 to 2003, India Music claimed accounts payable deductions for payments owed to HRI totaling $877,579, even though it never made a payment to HRI and HRI did not include the payments in its income.  Because India Music is a Subchapter S corporation, all of its income passes through to its shareholders for tax purposes.  *Nail v. Martinez*, 391 F.3d 678, 683 (5th Cir. 2004). Accordingly, the Commissioner issued the Bosamias a notice of deficiency in August 2008, informing them that India Music was not entitled to claim deductions for the payments to HRI from 1998-2004 until HRI included those payments in income.  The Commissioner then disallowed India Music's claimed

2

No. 10-60921

account payable deduction of $23,351 for payments to HRI it accrued in tax year 2004.

When the Commissioner issued his notice, the Code's three year statute of limitations for assessing income tax deficiencies barred him from assessing deficiencies against the Bosamias for the 1998 through 2002 tax years. 26 U.S.C. § 6501(a). However, because the Commissioner determined that his disallowance of India Music's year 2004 account payable deduction amounted to a change in India Music's method of accounting under § 481, he upwardly adjusted India Music's 2004 income to prevent the omission of income from tax by result of the change in accounting method. Specifically, the Commissioner made an upward adjustment of $877,581 to India Music's 2004 income to ensure that India Music's claimed accounts payable deductions from 1998 to 2003 did not escape taxation. These adjustments to India Music's year 2004 income created a corresponding deficiency in the Bosamias' 2004 income tax. Hence, the Commissioner determined that the Bosamias were liable for a tax deficiency of $295,818 and an accuracy-related penalty of $59,163.60.

The Taxpayers petitioned the Tax Court for a redetermination of the deficiency in tax and penalty determined in the notice of deficiency. They argued that the Commissioner's § 267(a)(2) disallowance did not constitute a § 481 change in method of accounting, thereby prohibiting the Commissioner from adjusting their 2004 income to account for the improper deductions claimed in the closed years from 1998-2002. The Tax Court upheld the Commissioner's notice of deficiency and penalty, holding that the § 267(a)(2) disallowance effected a change in India Music's method of accounting under § 481 because the disallowance amounted to a change in its treatment of a material item by postponing the timing of its cost of goods sold deduction. This appeal followed.

3

No. 10-60921

## II

### A

On appeal, the Taxpayers contend that the Tax Court erred as a matter of law by deciding that the Commissioner's § 267(a)(2) disallowance constituted a § 481 change in India Music's method of accounting. Instead, the Taxpayers assert that the Commissioner's § 267(a)(2) disallowance was only an "audit adjustment" to correct India Music's "erroneous deductions" for the 2004 tax year. In essence, they submit that the disallowance did not amount to a § 481 change in India Music's method of accounting because it neither (a) changed that entity's overall method of accounting nor (b) effected a change in that entity's treatment of a material item. The Commissioner, however, counters that the § 267(a)(2) disallowance effected a change in India Music's treatment of a material item because it postponed the proper time for the taking of the entity's account payable deduction for the 2004 tax year. In short, the Commissioner contends that by disallowing India Music's 2004 account payable deduction until HRI includes the underlying payments in income, it changed India Music's year 2004 method of accounting for accounts payable owed to HRI from the accrual method of accounting to the cash method of accounting. Because the Tax Court's decision rests on a pure question of law, we review its decision *de novo*. *Arevalo v. Comm'r*, 469 F.3d 436, 438 (5th Cir. 2006).

The parties stipulated in the tax court that if the Commissioner's § 267(a)(2) disallowance amounted to a change in India Music's method of accounting for tax year 2004, the Commissioner properly adjusted that entity's 2004 income to include the improper deductions from 1998-2003. The parties also stipulated that India Music and HRI were related parties under the Code and that India Music improperly deducted payments to HRI from its income for the tax years 1998-2004 because HRI did not include those payments in its income. Lastly, the parties stipulated that the Commissioner properly

4

No. 10-60921

disallowed India Music's claimed account payable deduction for tax year 2004 for payments owed to HRI.

Thus, the only question before us is whether the Commissioner's § 267(a)(2) disallowance of India Music's account payable deduction for tax year 2004 effected a change in India Music's method of accounting for the purposes of § 481. If it did, § 481 required the Commissioner to adjust India Music's 2004 income upward to prevent the amounts erroneously deducted from 1998-2003 from escaping taxation. If it did not, the Code's statute of limitations barred the Commissioner from assessing any deficiency based on erroneous deductions claimed by India Music in closed years.

B

Section 481 requires the Commissioner to adjust a taxpayer's taxable income to ensure accurate computation of income when that taxpayer changes its method of accounting from one year to the next. It provides, in relevant part:

> In computing the taxpayer's taxable income for any taxable year (referred to . . . as the "year of the change")—
>
> (1)    if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then
>
> (2)    there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted . . . .

26 U.S.C. § 481(a)(1)-(2).

Under § 481, "if income escapes taxation because of a change in accounting method, the Commissioner may make an adjustment by including the omitted income in the year of the change." *Graff Chevrolet Co. v. Campbell*, 343 F.2d 568, 570 (5th Cir. 1965). The section "authorizes 'necessary' adjustments 'to

5

prevent amounts from being duplicated or omitted,' in the 'year of change' whether 'initiated' by the taxpayer or the Commissioner." *Id.* at 572. Morever, there is "no necessary conflict between section 481 and the [Code's] statute of limitations." *Id.* Instead, the very purpose of § 481 is to allow the Commissioner to adjust a taxpayer's income for open years to reflect amounts attributable to closed years that would otherwise escape taxation due to a change in method of accounting. *Id.* ("Section 481 is designed to prevent a distortion of taxable income and a windfall to the taxpayer stemming from a change in accounting at a time when the statute of limitations bars reopening the taxpayer's returns for earlier years.").

Meanwhile, § 267(a)(2), as amended in 1984, "provides for a matching of [expenses] deductions and income where, in the case of related persons, the payor is an accrual-basis taxpayer and the payee is on a cash method of accounting." *Ronald Moran Cadillac, Inc. v. United States*, 385 F.3d 1230, 1233 (9th Cir. 2004). The provision "prevent[s] the use of differing methods of reporting income [by related parties] for Federal income tax purposes in order to obtain artificial deductions for interest and business expenses." *Id.* (quoting *Metzger v. Comm'r*, 76 T.C. 42, 75 (1981) (describing purpose of the predecessor of § 267(a)(2)). Specifically, § 267(a)(2) "bars a taxpayer from deducting a payment to a related taxpayer before the related taxpayer includes the payment in income." *Summit Sheet Metal Co.*, T.C. Memo 1996-563, 72 T.C.M. (CCH) 1606, 1996 WL 740748, at *11.

C

The first step in statutory interpretation "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is

used, and the broader context of the statute as a whole." *Id.* at 341 (citations omitted).    Although neither the language of § 267(a)(2) nor § 481 explicitly provides that a disallowance under § 267(a)(2) amounts to a change in a taxpayer's method of accounting, we still conclude that Congress plainly intended that a § 267(a)(2) disallowance effectuates a change in a taxpayer's method of accounting given the specific context in which the language in that subsection is used.

The applicable Treasury Regulations define a "change in the method of accounting" as including either "a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan." Treas. Reg. § 1.446–1(e)(2)(ii)(a); *see Huffman v. Comm'r*, 518 F.3d 357, 364 (6th Cir. 2008) (finding that § 1.446–1(e)(2)(ii)(a) defines changes in methods of accounting for the purposes of § 481).[2] The Commissioner agrees that India Music never changed its overall plan of accounting; therefore, in order for the § 267 disallowance to constitute a change in method of accounting, it must have effected a change in the treatment of a material item.

The applicable regulations define a "material item" as "any item that involves the proper time for the inclusion of the item in income or the taking of a deduction." Treas. Reg. § 1.446–1(e)(2)(ii)(a); *Huffman*, 518 F.3d at 364-65. The Commissioner contends that by disallowing India Music's 2004 account payable deduction until HRI included the underlying payment in income, it effectively changed India Music's treatment of a material item. We agree.

---

[2]    The Taxpayers are not asserting that the definition in Treas. Reg. § 1.446–1(e)(2)(ii)(a) fails to comport with § 481; instead, their appeal appears to be limited to whether a § 267(a)(2) disallowance constitutes a change in method of accounting under the definition in Treas. Reg. § 1.446–1(e)(2)(ii)(a).

No. 10-60921

From 1998 to 2004, India Music accounted for the accounts payable owed to HRI on an accrual basis, deducting the payments from income each year as they became fixed. But since HRI was a cash-basis taxpayer, it could not include the payments from India Music in its income until it received those payments. *See Arnwine v. Comm'r*, 696 F.2d 1102, 1111 (5th Cir. 1983) ("Cash basis taxpayers are required to include items of income in the taxable year in which such item is actually or constructively received.") (citations omitted). Thus, by "matching" the time at which India Music could deduct its accounts payable owed to HRI with the time at which HRI could include those payments as income, the Commissioner's § 267(a)(2) disallowance effectively changed India Music's accounting method for its account payable deduction in the 2004 taxable year from an accrual basis to a cash basis. That is, the Commissioner effected a change in India Music's treatment of a material item in 2004 by postponing the proper time for taking its account payable deduction. *See Summit Sheet Metal Co.*, T.C. Memo 1996-563, 72 T.C.M. (CCH) 1606, 1996 WL 740748, at *11 (holding that an "item is material . . . if the time for including it in income or deducting it is at issue"). Accordingly, the disallowance constituted a change in accounting method for the purposes of § 481 because it forced India Music to "comput[e]" its taxable income for the tax year 2004 "under a method of accounting different from the method under which [India Music's] taxable income for the preceding taxable year was computed." 26 U.S.C. § 481; *see Graff Chevrolet*, 343 F.2d at 572 (holding that § 481 authorizes necessary adjustments to income in the year of change whether the change in method of accounting was initiated by the taxpayer or the Commissioner).

Therefore, we find that the language of §§ 267(a)(2) and 481 plainly provides that a § 267(a)(2) disallowance constitutes a change in a taxpayer's method of accounting for the purposes of § 481, given the definition in the applicable Treasury Regulations. In essence, when Congress enacted the

8

No. 10-60921

current language in § 267(a)(2), empowering the Commissioner to postpone a related party payor's deduction until its related party payee included the underlying payment in its gross income, *see* Deficit Reduction Act of 1984, Pub. L. 98-369, § 174(a), 98 Stat 494 (1984), the applicable Treasury Regulations explicitly provided that a change in method of accounting included a change in the treatment of any material item—*i.e.*, "any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." Treas. Reg. § 1.446-1(e)(2)(ii)(a). Accordingly, by requiring the Commissioner to postpone the proper time at which taxpayers could take certain deductions arising from related party transactions pursuant to § 267(a)(2), Congress evinced a clear intent that applications of § 267(a)(2) necessarily change a taxpayer's method of accounting.

Further, the Tax Court's holding in *Summit Steel Co.*, *supra* at 2, supports our holding that a § 267(a)(2) disallowance constitutes a change in a taxpayer's method of accounting under § 481. In that case, the taxpayer argued that it had not changed its accounting method when it sought to change the year it deducted its officers' bonuses from the year it authorized them to the year in which the officers received and reported them. *Summit Steel Co.*, 1996-563, 72 T.C.M. (CCH) 1606, 1996 WL 740748, at *11. The taxpayer argued that the change did not effect a change in its method of accounting because it was only a "correction required to comply with section 267(a)." *Id.* The Tax Court rejected that contention, finding that even if § 267(a)(2) required the taxpayer to change the year it deducted its bonus payments, the postponement of the bonus deductions constituted a change in the taxpayer's method of accounting under § 446(e). *Id.* The Taxpayers contend that *Summit Steel Co.* does not support the Commissioner's position in this case because that case concerned a change in method of accounting under § 446(e), which requires a taxpayer to "secure the consent of the Secretary" before it changes its method of accounting. But we find

No. 10-60921

this distinction immaterial for deciding the case before us because the Taxpayers have failed to offer a persuasive rationale for why a § 267(a)(2) disallowance causes a change in a taxpayer's method of accounting for the purposes of § 446, but not § 481.

D

The Taxpayers make three main arguments challenging our holding, which we find all lack merit. First, they submit that although the § 267(a)(2) disallowance had the potential to delay India Music's deductions, it could also "preclude ultimate deductibility" if India Music were to go out of business before paying its accrued expenses to HRI. But that contingency is precisely the reason why the disallowance amounts to a change in India Music's method of accounting from an accrual basis to a cash basis. When parties account for expenses on a cash basis, as opposed to an accrual basis, they necessarily bear the risk that they will be unable to deduct those expenses if they never actually pay them. *Arnwine*, 696 F.2d at 1111. Thus, by postponing the time at which India Music could deduct its account payable and then upwardly adjusting its income to capture the improper deductions, the Commissioner only placed India Music in the same position it would have been had it properly accounted for its accounts payable on a cash basis from 1998-2004 as required by § 267(a)(2).

Second, the Taxpayers assert that the Commissioner has failed to provide any examples where he previously found that a § 267(a)(2) disallowance involves timing issues invoking a § 481 adjustment. This lack of authority, they contend, supports their argument that the two provisions "are not to be read together." They submit that the requirements of § 481 are mandatory, providing that the Commissioner "shall" make "necessary" adjustments to a taxpayer's income to avoid the "omission" of income from tax. Thus, the Taxpayers maintain that we would expect to find precedent for the proposition that a § 267(a)(2) disallowance

10

constitutes a change in a taxpayer's accounting method necessitating a § 481 adjustment if that has been the Commissioner's consistent position.

In essence, the Taxpayers' argument amounts to a claim that the Commissioner has changed his interpretation of the Code and relevant Treasury Regulations with retroactive effect. *See Microcomputer Tech. Inst. v. Riley*, 139 F.3d 1044, 1050 (5th Cir. 1998) (holding that when an agency changes its policy with retroactive effect, a reviewing court must determine the reasonableness of the new interpretation and whether application of the new policy to a party who relied on the old is so unfair as to be arbitrary and capricious). But our review does not reveal any case where the Commissioner previously adopted an explicit position on this question. Moreover, even if that doctrine applied to this case, we would find that the Commissioner was justified in changing its policy with retroactive effect because (1) his interpretation is plainly reasonable and (2) "the detrimental effect of prospectivity—partial frustration of what we have now determined is the proper statutory interpretation"—outweighs "the disadvantages of retroactivity—frustration of parties' expectations." *Id.* at 1051. That is, the Taxpayers cannot establish that they justifiably relied on the Commissioner's alleged implicit prior position when they violated § 267(a)(2), because it would amount to asserting that they violated the Code believing that they would be protected by the Code's statute of limitations if the Commissioner failed to disallow their improper deductions before the relevant tax years became closed.

Lastly, the Taxpayers maintain that the statute of limitations should bar the Commissioner from adjusting India Music's 2004 income to reflect improper deductions claimed in closed years; holding otherwise, they contend, would not serve our rationale for concluding that the application of § 481 did not conflict with the Code's statute of limitations in *Graff Chevrolet, supra* at 5. In that case, we found:

No. 10-60921

> There is no necessary conflict between section 481 and the statute of limitations. Until the year of the accounting change, the Commissioner has no claim against the taxpayer for amounts which the taxpayer should have reported in prior years. The statute of limitations is directed toward stale claims. Section 481 deals with claims which do not even arise until the year of the accounting change.

343 F.2d at 572. In this case, however, the Taxpayers submit that the purpose of the statute of limitations and the application of § 481 do conflict because nothing prevented the Commissioner from immediately correcting the § 267(a)(2) violations while the closed years were still open.

But, although the Commissioner had the authority to correct India Music's improper deductions in an earlier tax year if he had discovered them, we nevertheless find that applying § 481 here does not conflict with the Code's statute of limitations for the very reasons stated in *Graff Chevrolet*: "'[w]hen a taxpayer uses an accounting method which reflects an expense before it is proper to do so . . . , he has not succeeded (and does not purport to have succeeded) in permanently avoiding the reporting of any income . . . .'" *Graff Chevrolet*, 343 F.2d at 572 (quoting Note, *Problems Arising from Changes in Tax-Accounting Methods*, 733 HARV. L. REV. 1564, 1576 (1960). Therefore, as in *Graff Chevrolet*, applying § 481 to this case "'does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set at rest.'" *Id.* (quoting Note, 733 HARV. L. REV. at 1576.

### III

For the foregoing reasons, we affirm the judgment of the Tax Court, finding that the Taxpayers are liable for the deficiency and § 6662(a) accuracy-related penalty.