T.C. Memo. 2016-155

UNITED STATES TAX COURT

MARK L. NEBEKER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 31135-12, 1955-13.                 Filed August 16, 2016.

Alvah Lavar Taylor and Lisa O. Nelson, for petitioner.

Heather K. McCluskey and Alexander J. DiPirro-Beard (student), for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge: Petitioner formed a successful sole proprietorship before
the years at issue, and the manner in which he accounted for the independent
contractor expenses his business incurred with respect to his clients beginning in
2004 has led to income tax issues with the Internal Revenue Service (IRS) and

[*2] ultimately to notices of deficiency for tax years 2006 and 2009.  The notices of deficiency determined deficiencies, an addition to tax under section 6651(a)(1),[1] and penalties under section 6662(a) as follows:[2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 2006 | $223,359 | $55,840 | $44,672 |
| 2009 | 89,462 | --- | 17,892 |

FINDINGS OF FACT

Petitioner resided in California when he timely filed the petition. Petitioner's business, the Project Man, was a sole proprietorship, and he reported its income and expenses on a Schedule C, Profit or Loss From Business.  The Project Man operated nationwide and had an impressive list of clients.

Petitioner has 4-1/2 years of education from Orange Coast College and Brigham Young University but did not receive a bachelor's degree.  Petitioner studied business management and communications while at Orange Coast College

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[2]Some other issues have been settled, and petitioner concedes the section 6651(a)(1) addition to tax for tax year 2006.

[*3] and Brigham Young University but took only basic accounting courses and did not take any tax classes.

Petitioner has operated the Project Man since 1995. It provided project management consulting primarily for aerospace and defense companies. The Project Man's main clients included Sikorsky Aircraft, Pratt & Whitney Engine Builders, Moog Aerospace, Hamilton Sundstrand Aerospace, and Humphreys & Associates.

Petitioner was single during 2006 and 2009. Petitioner filed his Form 1040, U.S. Individual Income Tax Return, late for 2006, on December 22, 2009. Both petitioner and his return preparer signed the 2006 return on December 22, 2009. Petitioner timely filed his individual Federal income tax return for 2009.

Petitioner maintained a separate business bank account for the Project Man. He used Microsoft Money software to track his business income and expenses. The Project Man's clients would pay all amounts owed directly via check or direct deposit, which were all deposited into the business bank account. Petitioner generally reported as income the amounts the Project Man actually received during the calendar year on the Schedule C attached to his income tax return for that particular calendar year.

[*4]    Because of the nature of the Project Man's work, the business required "traceability", meaning that petitioner had to be able to track all data regarding the Project Man's income and expenses and to match the expenses with the invoices he submitted to the Project Man's clients. Because the Project Man was involved with Government programs, the Project Man's records were subject to being audited at any time. Petitioner coded the Project Man's invoices to clients very specifically in order to be able to match the expenses with the invoices submitted to the clients.

The Project Man and its clients did not have uniform contractual arrangements. Each client had its own method of reimbursing for travel expenses, but there were generally two distinct methods of reimbursement. The parties characterize the reimbursement methods as "dollar for dollar" and "wrapped rate". Dollar for dollar is aptly named as it connotes reimbursement for the actual travel expenses petitioner and the Project Man's subcontractors incurred on the basis of receipts submitted to the clients. Sikorsky Aircraft used the wrapped rate method to avoid reviewing specific travel expenses by adding a flat fee to the hourly rates. This flat fee was based upon prior three years' work of the Project Man for Sikorsky Aircraft and its parent company.

**[*5]**   The Project Man would pay its independent contractors an hourly rate for labor and for expenses incurred for traveling to its client's location.  The Project Man paid the independent contractors every two weeks for labor and travel expenses they incurred, regardless of whether the Project Man's clients had paid the invoices associated with the subcontractors' labor and expenses.  Petitioner would submit invoices to the Project Man's clients approximately every four or five weeks.  These invoices itemized the subcontractors' time and travel expenses associated with the particular client receiving each invoice.  Each subcontractor was also given a coded number that was reflected on the invoices.

The clients typically would not pay the Project Man for at least 60 days after the Project Man submitted invoices to them.  There were many times, however, when the clients did not send payment of invoices for at least 90 days.  On occasion, petitioner did not receive payments from the Project Man's clients for as much as six months after the dates on which the invoices were submitted.  At times, the Project Man would receive portions of the payments from the clients for subcontractor labor and travel expense reimbursements in tax years that were later than the years in which the Project Man had paid the independent contractors for the work reflected on the invoices.

**[*6]** Because the Project Man's invoices were coded for purposes of maintaining "traceability", petitioner would attempt to match any payments made by the clients to the invoices sent to them and match the revenue with the expenses associated with generating that revenue whether the revenue related to expenses from a prior year or the current year.

Petitioner deducted the subcontractor expense on his Schedule C as "outside services" for the year in which his client paid the related invoice. Petitioner thus claimed the income tax deduction for outside labor associated with payments made to subcontractors for the year in which the Project Man received payment for the subcontractor expense the Project Man incurred, regardless of whether the Project Man paid the subcontractor in a prior year. Martin DeKarver, petitioner's certified public accountant (C.P.A.), approved this method of determining the amount of each year's deduction for outside services.

This process of deferring tax deductions for the Project Man's subcontractor labor and subcontractor travel expenses began in 2004 and continued all the way through 2009.

On his Federal income tax returns petitioner claimed other expense deductions for outside services of $1,373,309 and $392,210 for 2006 and 2009, respectively. The parties agree petitioner actually paid $1,087,551.72 and

[*7] $180,665.62 for outside services expenses of the Project Man during 2006 and 2009, respectively. The remaining $285,757.28 and $211,544.38 are amounts petitioner paid for outside services for prior years for which he deferred deductions until 2006 and 2009, respectively. Petitioner took this action on the basis of Mr. DeKarver's advice. Respondent issued two notices of deficiency, one for each year at issue, and petitioner timely petitioned this Court.

C.P.A.

Mr. DeKarver has been licensed in California as a CPA since 1971. He has prepared tax returns since at least 1981. Tax year 2000 was the first year for which Mr. DeKarver prepared a tax return for petitioner. He prepared petitioner's Federal income tax returns for 2006 and 2009.

Around 2004 petitioner experienced a growth spurt in his business. However, because of delay in payments from his clients for both 2004 and 2005, he would have paid little if any tax for those years under the cash method of accounting. Petitioner was concerned the returns did not reflect the profit he was actually making.

Mr. DeKarver noticed the Project Man had very little income, or possibly, even a loss for 2004. Mr. DeKarver questioned why petitioner stayed in a business that was losing money. He asked petitioner, and petitioner explained that

**[\*8]** the Project Man was paying independent contractor expenses for which it was not receiving the income until much later. As a result of discussions with Mr. DeKarver, petitioner began deferring deductions for the Project Man's expenses for outside services until it received the income associated with those expenses.

Mr. DeKarver checked the box next to the cash method of accounting on petitioner's Schedules C for tax years 2006 and 2009. Mr. DeKarver testified he did not feel the need to check "other" because he did not think the method had changed from cash accounting.

Travel Expenses

Petitioner claimed a Schedule C travel expense deduction of $53,032 for tax year 2006. At the time he prepared the return Mr. DeKarver thought all of the travel expenses for which petitioner claimed a deduction for 2006 were for business. Petitioner asserts that he had a "system crash" at some point and some data had to be downloaded from other sources, resulting in miscategorization of some travel expenses.

Petitioner now asserts the claimed deduction of $53,032 for travel expenses comprises the following:

[*9]

| Expense | Amount |
|---|---|
| Advertising | $30,890.00 |
| Travel misc. | 5,731.77 |
| Taxi/limo | 75.00 |
| Lodging | 7,520.40 |
| Airfare | 5,828.89 |
| Car rental | 2,986.17 |
| Total | 53,032.23 |

The only documents petitioner provided to substantiate the amounts paid for expenses for which he claimed a travel expense deduction for 2006 were Microsoft Money software summaries, one invoice from Destination Cycling, and three pages of Citibank credit card statements.

The Destination Cycling invoice does not include a breakdown of what is included in the $30,890 cost. The bulk of the claimed expenses relates to two bicycling trips petitioner took to Europe. Petitioner had raced bikes for 10 years.

Destination Cycling is a company that puts on different tour and cycling events, predominantly in Europe. Destination Cycling organized the two bicycling trips to Europe in which petitioner participated in 2006. The two trips were associated with the Tour de France in France in July 2006 and the Giro d'Italia in

[*10] Italy in May 2006. Petitioner has participated in Destination Cycling trips in the past.

Petitioner testified he was approached about becoming involved with the two cycling events because Destination Cycling was looking for additional sponsors. By paying a sponsorship fee, petitioner was able to participate in both the Tour de France and the Giro D'Italia.

For the event in France, participants were able to ride the actual Tour de France course, visiting every city of the route. Each of the two cycling events lasted for about 18 to 19 days. Sponsorship of both events cost a total of $30,890. The sponsorship fee covered petitioner's participation in the events, uniforms, and other items such as a crew who took care of meals.

The Project Man's logo as well as all the other sponsors' logos appeared on the group's gear. Petitioner was the only individual associated with the Project Man to participate in the event.

Petitioner testified that before going on the bicycling trips he researched potential business opportunities to pursue in Europe. However, petitioner later admitted some of the research was done while the instant cases were being considered by the IRS Office of Appeals. Networking during the trips turned out to be more difficult than petitioner had expected. During the day petitioner and

**[*11]** the other event participants were busy with cycling events. Petitioner spent a couple of days in Europe for personal time after each event.

Preparation of Tax Returns

Mr. DeKarver set aside an hour or two to meet with petitioner in person as part of preparing petitioner's tax returns. When petitioner prepared Forms 1099-MISC, Miscellaneous Income, for the independent contractors at the end of each year, the amounts listed would include the amounts paid for labor but not the reimbursed travel expenses.

OPINION

## I. Accounting Method

Petitioner maintains the Project Man did not change its accounting method but rather used a method of deduction for subcontractor expenses that was consistent with cash basis accounting. Respondent counters that this method of accounting is not consistent with the cash method and therefore the Project Man did not follow the cash method for reporting its expenses for independent contractors. Respondent's principal argument is based on section 1.446-1(c)(1)(iv)(a), Income Tax Regs., which provides that if income is reported on the cash method, expenses must also be reported on the cash method. Petitioner

**[\*12]** counters that any reasonable method that clearly reflects income is acceptable.  See id. paras. (a)(2), (c)(1)(iv).

Petitioner also maintains that respondent's adjustments are a change of accounting method and respondent's failure to treat the adjustments as such prevents any adjustment.  Both parties fail to adequately discuss on brief the proper treatment of respondent's adjustments if petitioner's method is deemed invalid, but change of accounting method adjustments are required by section 481.

The parties give us little in the way of authority to address their disagreement, but section 1.446-1(c)(1)(iv)(a), Income Tax Regs., convinces us that respondent was correct to adjust the method the Project Man used.[3]  The more difficult question is whether respondent's change requires the application of section 481.

---

[3]Any combination of the methods of accounting set out in sec. 446 is permitted in connection with a trade or business if the combination clearly reflects income and is consistently used.  Sec. 1.446-1(c)(1)(iv)(a), Income Tax Regs. Here, use of the cash method in computing gross income from a trade or business necessitates use of the cash method in computing expenses of the trade or business.  Petitioner failed to clearly reflect income because he applied a method of deducting subcontractor expenses that was inconsistent with the cash method of accounting.  See, e.g., Grider v. Commissioner, T.C. Memo. 1999-417 (holding that a taxpayer's method of accounting that is plainly contrary to the regulations does not clearly reflect income).

**[\*13]** Section 446(e) provides authority for respondent's adjustment of the Project Man's method of accounting. Section 446(e) provides that a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary. Petitioner never filed an application to change the method of accounting, nor did he follow the procedure for automatic consent laid out in Rev. Proc. 97-27, 1997-1 C.B. 680. Under section 446(e) respondent can require the Project Man to abandon the new method of accounting and to report taxable income using the old method of accounting. See, e.g., Commissioner v. O. Liquidating Corp., 292 F.2d 225, 231 (3d Cir. 1961), rev'g T.C. Memo. 1960-29. Further, under section 1.466-1(c)(1)(iv)(a), Income Tax Regs., a taxpayer who uses the cash method in computing gross income from a trade or business shall use the cash method in computing expenses of such trade or business. The Project Man is therefore precluded from changing its method of accounting under section 446(e) and the regulations thereunder, regardless of whether the method proposed is proper.

Section 1.446-1(a), Income Tax Regs., provides that "the term 'method of accounting' includes not only the overall method of accounting of the taxpayer but also the accounting treatment of any item." The regulation further provides that

**[\*14]** [a] change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any <u>material item</u> used in such overall plan. Although a method of accounting may exist under this definition without the necessity of a pattern of consistent treatment of an item, in most instances a method of accounting is not established for an item without such consistent treatment. A material item is any item that involves the proper time for the inclusion of the item in income or the taking of a deduction. Changes in method of accounting include * * * a change involving the adoption * * * of any other specialized method of computing taxable income, * * * <u>and a change where the Internal Revenue Code and regulations under the Internal Revenue Code specifically require that the consent of the Commissioner must be obtained before adopting such a change</u>.

Id. para. (e)(2)(ii) (emphasis added); see also id. sec. 1.481-1(a)(1). An essential characteristic of "material item" within the purview of the regulation governing a change in accounting method is that it determines the timing of income or deductions. Secs. 446, 481; <u>Knight-Ridder Newspapers, Inc. v. United States</u>, 743 F.2d 781, 798 (11th Cir. 1984).

We have concluded that a section 267(a)(2) disallowance constituted a change in a taxpayer's method of accounting under section 481. <u>Bosamia v. Commissioner</u>, 661 F.3d 250 (5th Cir. 2011), <u>aff'g</u> T.C. Memo. 2010-218.

In <u>Connors, Inc. v. Commissioner</u>, 71 T.C. 913 (1979), a cash basis taxpayer consistently deducted bonuses paid to its president and sole stockholder on the accrual basis. The taxpayer accrued a bonus in 1973, claimed the deduction for

**[\*15]** 1973, and paid the bonus in 1974. Id. at 914-915. In Connors, Inc., this Court held that the Commissioner's requirement that the taxpayer report this material item in the year paid was a change in the taxpayer's method of accounting and under section 481 the Commissioner was authorized to include in the taxpayer's income for 1974 the amount of the bonus the taxpayer erroneously deducted for 1973.

Following Connors, Inc., we conclude that petitioner's method of deferring his deduction is a method of accounting that he consistently used. Thus, respondent's adjustment in the notice of deficiency to that material item for tax years 2006 and 2009 constitutes a change in his accounting method, which triggers the application of section 481.

"If there has been a change in method of accounting, then section 481 comes into operation and adjustments necessary to prevent an omission of taxable income must be made." Primo Pants Co. v. Commissioner, 78 T.C. 705, 720 (1982). "Where the statutory notice and pleadings are sufficient to raise the issue of change in accounting method, the application of section 481 is patent. * * * Here, the statutory notice raised the issue of change in accounting method; therefore, section 481 was triggered." Emert v. Commissioner, T.C. Memo. 1999-175, slip op. at 4 (fn. ref. omitted), aff'd, 249 F.3d 1130 (9th Cir. 2001).

[*16] Section 1.481-1(a)(1), Income Tax Regs., provides that

> [i]n computing taxable income for the taxable year of the change, there shall be taken into account those adjustments which are determined to be necessary solely by reason of such change in order to prevent amounts from being duplicated or omitted. The 'year of the change' is the taxable year for which the taxable income of the taxpayer is computed under a method of accounting different from that used for the preceding taxable year.

Therefore, the change in the method of accounting took place in 2006. We hold that section 481 adjustments are required, and we leave the application of section 481 in these cases to the parties' agreement or a Rule 155 computation.

## II. Travel Expenses

Deductions for traveling expenses are allowable only if incurred while away from home in the pursuit of a trade or business. Sec. 162(a)(2). Substantiation of these expenses must be provided. Sec. 274(d). Specifically, for travel expenses a taxpayer must substantiate the amount of the expense, the time and place of the trip, and the business purpose of the expense. See sec. 274(d); sec. 1.274-5T(b)(2), Temporary Income Tax Regs, 50 Fed. Reg. 46014 (Nov. 6, 1985). Additionally, deductions for foreign travel expenses generally are allowed only for the portion of the expenses allocable to a taxpayer's trade or business activity. See sec. 274(c); sec. 1.274-4(a), Income Tax Regs.

**[*17]** Petitioner claimed a deduction of $53,032 for Schedule C travel expenses on his tax return for tax year 2006. To substantiate expenses not related to the European bicycling trips, petitioner provided only a Microsoft Money document reflecting a summary of his travel broken down by category of travel expense. However, there is not enough information provided to establish that the expenses were actually paid or what the business purpose was for each expense. For instance, expenses identified as "PM training" are far too vague to be established as business expenses. Other expenses, such as those identified as "Sikorsky Program Review", seem to be those which would have been reimbursed by the client. Petitioner failed to offer any testimony to supplement the documentary evidence and establish these were deductible business expenses.

The expenses identified on petitioner's Microsoft Money documents as "Giro Challenge World Bicycle Relief" and "TDF [Tour de France] World Bicycle Relief" are now being claimed as promotional or advertising expense deductions. The largest expense petitioner incurred with respect to the European bicycling trips is the $30,890 paid to Destination Cycling, which petitioner has established he paid. However, the Destination Cycling invoice fails to disclose what the expenses covered.

[*18] For the rest of the European bicycling trip expenses, petitioner produced no receipts or other proof of payment. Rather, petitioner relies only on the Microsoft Money summary sheets. Also, petitioner neither gave an exact number of days for each trip nor computed the nondeductible portion of each expense on the basis of business and nonbusiness days. Most importantly, however, petitioner has failed to show a bona fide business purpose for the bicycling trips. Petitioner testified he has raced bicycles for years and has participated in other Destination Cycling events. On the record before us we find petitioner did not have a business purpose for the bicycling trip expenses.

The Destination Cycling events seem to be more trips for petitioner's entertainment than ones with a business purpose. Petitioner's testimony as to the business purpose of the events revealed a vague and generalized idea that he would network while he was on the trips. However, petitioner offered no evidence other than his own self-serving testimony that he actually did any business activity while on the two bicycling trips.

Advertising expenses are generally deductible if they are ordinary, necessary, and reasonable in amount and bear a reasonable relation to the business. See sec. 162; sec. 1.162-1(a), Income Tax Regs. A sponsorship may also be deductible, but the taxpayer has to prove it was proximately related to his

[*19] business.  See Snow v. Commissioner, 31 T.C. 585, 591-592 (1958).  Also, a claimed advertising expense cannot be a "thin cloak for the pursuit of a hobby." Rodgers Dairy Co. v. Commissioner, 14 T.C. 66, 73 (1950).

As a factual matter, petitioner seeks to characterize the $30,890 expense paid to Destination Cycling as an advertising expense rather than a travel expense as claimed on his 2006 income tax return.  Petitioner testified an error occurred because he had a loss of data at some point and had to reconstruct some expenses. He testified that American Express automatically categorized some expenses as travel.  We note that petitioner paid the $30,890 expense with his Citibank credit card.  Even still, how American Express or any other credit card company categorizes an expense would not have been dispositive.  Mr. DeKarver testified that at the time he prepared the return he knew about the European bicycling trips and thought the associated expenses were travel expenses.

Regardless, petitioner failed to adequately establish that the amount paid to participate in the European cycling events is a valid advertising expense. Petitioner has not shown the $30,890 was an ordinary and necessary business expense, and the expense bears no proximate relation to petitioner's business. Petitioner testified only generally about the worldwide popularity of the Tour de France as well as the existence of aerospace/defense type companies in Europe.

[*20] Petitioner's research on the matter was also vague and comprised mostly airplane diagrams and general lists of airplane component manufacturers. Petitioner admitted there was no one else in his industry taking part in the event. Additionally, petitioner was riding 120 miles per day, meaning there was very little time to do anything work related. The presence of the Project Man's logo on jerseys and other gear is not sufficient to justify the $30,890 cost of participation as a deductible business expense.

III.  Section 6662(a) Penalty and the Reasonable Cause Exception

Respondent determined a 20% accuracy-related penalties with respect to petitioner's underpayments of tax under section 6662(a) and (b)(2) attributable to substantial understatements of income tax. There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Respondent meets the burden of production by establishing that the amount of petitioner's understatement of income tax exceeded the greater of 10% of the tax required to be shown on the return or $5,000 for each year at issue. See sec. 7491(c).

The section 6662(a) penalty is not applied to any portion of an underpayment when the taxpayer shows "there was a reasonable cause for such

**[\*21]** portion and that the taxpayer acted in good faith with respect to such portion." Sec. 6664(c)(1). Under the regulation implementing section 6664(c), the decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a "case-by-case" basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. This regulation also provides:

> Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer * * *. Reliance on * * * professional advice, or other facts, however, constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. * * *

Id.

All facts and circumstances, including the taxpayer's education, sophistication, and business experience, are taken into account in determining whether the taxpayer reasonably relied on the opinion or advice of a professional. Id. para. (c)(1). A taxpayer is not considered to have reasonably relied in good faith on advice unless all of the requirements of paragraph (c)(1) are satisfied. Reliance may not be reasonable and in good faith if, for example, the taxpayer knew or should have known that the adviser lacked knowledge in the relevant

**[\*22]** aspects of Federal tax law or if the advice was based on unreasonable factual or legal assumptions.  Id.

"Advice" in this context is defined as "any communication, including the opinion of a professional tax adviser, setting forth the analysis or conclusion of a person, other than the taxpayer, provided to (or for the benefit of) the taxpayer and on which the taxpayer relies, directly or indirectly".  Id. subpara. (2).  In order for a taxpayer to rely on professional advice to establish reasonable cause, the taxpayer must show:  "(1) [t]he adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment."  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98-99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner asserts he relied on his return preparer, Mr. DeKarver, to establish the reasonable cause exception applies both for the deductions disallowed for travel and advertising expenses and for the accounting method.  As to the first prong, Mr. DeKarver is a licensed CPA who has been preparing tax returns and providing tax advice for more than 30 years.  Mr. DeKarver had sufficient training and experience to justify reliance.

[*23] As to the second prong, petitioner provided Mr. DeKarver with the available records and did not withhold information from him. Respondent argues Mr. DeKarver did not have complete information and that he was misled about the expenses paid for the trips to France and Italy. While we would agree Mr. DeKarver's analysis of the trips is poor and disjointed, we find he was given access to the facts surrounding the trips.

Satisfaction of the last prong of the test, whether petitioner reasonably relied upon Mr. DeKarver's advice, is the most difficult for us to determine. Regarding the accounting issue, we find the reliance was reasonable and based upon a plausible theory for a layman such as petitioner. Regarding the travel expenses, we find the reliance is a closer question, given petitioner's unconvincing business purpose for the expenses as advertising and the insubstantial documentation of the travel-related expenses. Although petitioner was careless in failing to maintain clear travel records, he acted in good faith in providing what information he had available to Mr. DeKarver and reasonably believed Mr. DeKarver had all the information necessary to accurately prepare his tax returns. Petitioner was not a tax expert and could not be expected to second-guess Mr. DeKarver's advice regarding the expenses for the European trips on these facts.

Accordingly, we will not sustain the penalties under section 6662(a).

**[*24]** The Court has considered all other arguments made by the parties and, to the extent not specifically addressed herein, has concluded that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.